WR-86,973-03
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/6/2017 4:24 PM
Accepted 10/6/2017 4:31 PM
DEANA WILLIAMSON
CLERK

/-

CAUSE NO. C-1-CR-17-100018

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE COUNTY COURT |
| | § | COURT OF CRIMINAL APPEALS |
| VS. | § | AT LAW NUMBER |
| | § | |
| ADAM REPOSA | § | TRAVIS COUNTY, TEXAS |

RECEIVED
COURT OF CRIMINAL APPEALS
10/6/2017
DEANA WILLIAMSON, CLERK

## AMENDED ORDER

On the 11th and 12th days of September, 2017, came on to be heard the above referenced case for trial pursuant to Section 21.002 of the Texas Government Code. Petitioner State of Texas appeared through its attorneys of record; Respondent Adam Reposa appeared in person and through his attorneys of record; all parties announced ready.

As a result of certain conduct that occurred on March 27, 2017 during jury selection in the underlying criminal case, Respondent was found in direct contempt of court by Judge Nancy Hohengarten, who was presiding. Judge Hohengarten, in her written order dated April 3, 2017, found that Respondent had committed five (5) acts of contempt of court. Judge Hohengarten requested, pursuant to Art. 21.002(d), that another judge be appointed to hear the contempt matter. On April 4, 2017, the undersigned judge was assigned to the County Court at Law #5 of Travis County, Texas, and appointed to preside over this contempt proceeding.

### Decision and Discussion

The Court has considered the evidence and argument of counsel and makes the following findings:

1. Refused to come to the bench after being summoned by the Court: Guilty

See transcript, Ex. 1, p. 14, l. 9-23. Additionally, the evidence before this Court during the trial of this matter shows how Respondent refusing to come to the bench when asked was part of Respondent's overall strategy to attempt to have the members of the jury disrespect the law, the Judge, the Court, the facts of the case and engage in "jury nullification." This comment applies to many of the findings below.

1

2. Continued to question the venire panel when the Court was attempting to have a bench conference:   Guilty

   See transcript, Ex. 1, p. 9, l. 14-16.

3. Continued to question a venire person after the Court instructed the juror not to answer the question:      Guilty

   See transcript, Ex. 1, p. 8, l. 6 – p. 9, l. 23

4. Stated within the hearing of the venire panel "I want to show the people how hard it is to get a fair trial in this court and that's what I'm doing":
   Guilty

   See transcript, Ex. 1, p. 10, l. 9-11; p. 10, l. 15 – p. 11, l. 8. Additionally, the evidence adduced during the trial indicates that the jury panel could hear the comment, and indeed it was directed at the jury panel and not the Court.

5. Spoke in a tone and tenor that was disrespectful when addressing the Court:       Guilty.

   The audio transcript was admitted in evidence in the trial and shows Respondent's disrespectful tone.

### Punishment

This Court has broad discretion to assess an appropriate punishment within the range prescribed by the legislature.

The Texas Government Code mandates judges to "require that proceedings be conducted with dignity and in an orderly and expeditious manner and control the proceedings so that justice is done." Texas Gov't Code §21.001(b). To the same effect is Canon 3.B(3) of the Texas Code of Judicial Conduct, which provides that judges "shall require order and decorum in proceedings before the judge."

In 1947, the United States Supreme Court wrote:

> Sentences for criminal contempt are punitive in their nature, and are imposed for the purpose of vindicating the authority of the court. *Gompers v. Bucks Stove & Range Co., 221 U.S. 418,* at 441 (1911). The interests of orderly government demand that respect and compliance be given to

orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience does so at his peril. In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future. *United States v. United Mine Workers*, 330 U.S. 258, at p. 302-303 (1947).

In his concurring opinion in that same case, Mr. Justice Frankfurter wrote:

In our country law is not a body of technicalities in the keeping of specialists or in the service of any special interest. There can be no free society without law administered through an independent judiciary. If one man can be allowed to determine for himself what is law, every man can. That means first chaos, then tyranny. Legal process is an essential part of the democratic process. For legal process is subject to democratic control by defined, orderly ways which themselves are part of law. *Id.*, at p. 312.

In its unpublished opinion in a prior direct contempt ruling, denying Respondent's application for a writ of habeas corpus (Ex parte Reposa, 2009 Tex. Crim. App. Unpub. LEXIS 725 (Tex. Crim. App., Oct. 28, 2009), the Texas Court of Criminal Appeals commented:

Judge Davis made it clear that he wanted the sentence [90 days] to send a message [to Respondent] in order to prevent the applicant's conduct from continuing in the future. *Id.*, at p. 42 - 43.

However, Respondent's contumacious conduct continues to this day. In a video posted by Respondent on August 9, 2017, and admitted into evidence in the trial of this case, Respondent declared that this Court "is going to be the subject of our new focus on weakness.... I told my lawyer to tell the Judge to 'eat a ****'.... There is no question this is stupid. This is just how stupid are they going to let me make them look before they agree that their position is WEAK. Further, in that same video, Respondent declares his intent to obstruct the legal process by stating "... I'm going to show you the way it really goes in a town called F***around." State's Exhibit 19.

3

In another video that was admitted into evidence in the trial of this case, and posted by Respondent on July 11, 2017 (State's Exhibit 17), Respondent declared that "every person connected with this contempt case is just doing what they are told." Respondent pointed to Judge Hohengarten's portrait while calling her "weak."

During the pendency of this case, Respondent has made other statements to and about the prosecutors. The statements are harassing, intimidating, disrespectful, gross, and hostile. After a hearing, this Court issued an injunction against Respondent discussing this case with the prosecutors directly. Respondent recently prepared and circulated demeaning and disrespectful drawings superimposed over pictures of the Court, Judge Hohengarten and one of the prosecutors, ostensibly for an advertisement for a (non-law related) business owned by Respondent.

The efforts of Respondent to intentionally obstruct the trial proceedings on March 27, 2017, to intentionally obstruct and demean this Court during the pendency of this proceeding, to attempt to intimidate and harass the prosecutors in this case, and to demean the Judge of the Court in which Respondent was appearing on March 27, 2017 all show a definite pattern of conduct by Respondent that is totally improper and incompatible with Respondent's obligations as an attorney in our legal system. When a lawyer disagrees with a judge's ruling, the proper course of action is to request a hearing outside the presence of the jury, make a complete record of the error to preserve it for appellate review, and then take the matter to the appellate court. It is improper to attempt to show the judge's error to the jury or jury panel, in an effort to convince the jury of the unfairness of the court.

Some attorneys have testified that Respondent pushes the envelope and that his strategies and tactics keep the system honest. There was further testimony that Respondent being held in contempt of court would have a chilling effect on the bar. Respondent's tactics in this case were over the line. Instead of

keeping the system honest, these tactics have the effect of bringing the legal system into disrepute. If the effect on the bar of Respondent's contempt finding is to "chill" disrespect of the Court, that is a positive thing. However, this Court is only focused on Respondent and his conduct.

It is this Court's JUDGMENT and ORDER that Respondent serve six (6) months in the Travis County Jail for each of the five contempt findings, with the sentences to run concurrently, and for Respondent to serve this sentence day for day. Respondent shall present himself to the Travis County Sheriff's Office on or before ___ o'clock ___ m. on ___, 2017 to begin his sentence.

Signed this ___ day of September, 2017.

Paul Davis
Judge Presiding
By Assignment

FILED FOR RECORD
2017 OCT -2 PM 2: 21
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

5